IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Corey Lamont Mixon, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| The City of Mullins and John H. Pettiford, in his individual capacity, | ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Corey Lamont Mixon, by and through his undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against John Henery Pettiford in his individual capacity for injuries suffered by Corey Mixon on September 28, 2023, as well as a Tort Claims Act action pursuant to S.C. Code Ann. § 15-78-10, *et seq.*, for gross negligence against the City of Mullins.

## **PARTIES**

1.	Plaintiff Corey Lamont Mixon (hereinafter "Plaintiff" or "Mixon") is a citizen of South Carolina and resides in Marion County.

2.	At all times relevant to this Complaint, the City of Mullins (hereinafter "Defendant Mullins") has been a governmental entity established under the laws and constitution of the State of South Carolina, transacting and conducting business in South Carolina, and with a principal place of business in Mullins, South Carolina. At all times relevant to this Complaint, the Mullins Police Department (hereinafter "MPD") was a subdivision of Defendant Mullins, and all officers with the MPD were servants, agents, and/or employees of Defendant Mullins.

3. Upon information and belief, Defendant John H. Pettiford (hereinafter "Defendant Pettiford") is a citizen of South Carolina and resides in Dillon County, South Carolina, and was employed as a police officer with the MPD and was acting under color of state law at all times relevant to this Complaint. He is being sued in his individual capacity.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the federal claims against Defendant Pettiford pursuant to 18 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

5. This Court further has supplemental jurisdiction over the state claims against Defendant Mullins pursuant to 28 U.S.C. § 1367 because those claims arise under the same facts as those over which the Court has original jurisdiction as described in the preceding paragraph.

6. This Court further has personal jurisdiction over all Defendants as they reside in this District and their acts and/or omissions complained of occurred within this District.

7. Venue is proper in the District of South Carolina, Florence Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), as Defendant City of Mullins resides in Marion County and Defendant Pettiford resides in Dillon County and the acts or omissions complained of occurred within Marion County.

## FACTUAL ALLEGATIONS

8. The incident forming the basis of this complaint occurred between Jade Court and Walker Court in Marion, South Carolina (hereinafter "the scene").

9. At all times relevant to this Complaint, Defendant Pettiford was a police officer with the MPD.

10. Prior to working for the MPD, Defendant Pettiford worked as a police officer with the Dillon Police Department. Defendant Pettiford was terminated by the Dillon Police Department on September 7, 2018, for violation of agency policy. Thereafter, MPD hired Defendant Pettiford on April 1, 2019.

11. In the months leading up to the incident forming the basis of this complaint, Defendant Pettiford was abusing his father, Solomon Pettiford, who was 80-years-old.

12. Defendant Pettiford's sisters attempted to notify the MPD, but they did not investigate or otherwise respond to the alleged abuse because Defendant Pettiford "was one of theirs."

13. Defendant Pettiford's sisters repeatedly attempted to notify the MPD about Defendant Pettiford's abuse of their father, but the MPD continued to ignore these complaints.

14. Defendant Pettiford's sisters called police to report the abuse but, instead of sending an officer to check on Solomon Pettiford or investigate the situation, officers would give Defendant Pettiford a heads up that they were coming.

15. When officers would arrive at the Pettiford's home, Defendant Pettiford would tell them that Solomon Pettiford was crazy and officers would go on their way.

16. Defendant Pettiford allegedly stole $10,000 out of Solomon Pettiford's bank account to purchase a personal truck.

17. Defendant Pettiford's sisters also attempted to inform MPD that Defendant Pettiford had "gone off the deep end" and had been misusing his painkillers, but the MPD did not investigate or otherwise address the allegations.

18.     Upon information and belief, Defendant Pettiford exploited his position as a police officer as a sword and a shield, using it to break the law and escape criminal liability and/or receive the benefit of the doubt from law enforcement.

19.     On September 28, 2023, Plaintiff was at a loan business in Marion when Defendant Pettiford approached him and told him that he had purchased a new mobile home.

20.     Defendant Pettiford asked Plaintiff if Plaintiff could come by the property that afternoon.

21.     Plaintiff told Defendant Pettiford that he was busy, but that he would get back to him.

22.     Plaintiff then left to go to Bishopville to finish a job.

23.     After Plaintiff finished the job and dropped off his workers in Marion, a friend noticed that Defendant Pettiford was "blowing up" Plaintiff's phone.

24.     Thereafter, Plaintiff spoke with Defendant Pettiford and Defendant Pettiford asked if Plaintiff could come by his property that afternoon.

25.     Plaintiff told Defendant Pettiford that he would be there in 15 to 20 minutes.

26.     When Plaintiff arrived at the scene, Defendant Pettiford was present at the mobile home.

27.     Defendant Pettiford's Mullins police truck was parked at the property and he was wearing his MPD duty weapon, his badge, and what appeared to be a blue uniform.

28.     Because Defendant Pettiford wore his duty weapon and badge, Plaintiff believed Defendant Pettiford was on duty at that time.

29.     While Plaintiff and Defendant Pettiford were in the yard, Solomon Pettiford drove up.

30. Defendant Pettiford and Solomon Pettiford then got into an altercation before Defendant Pettiford told Solomon to leave the property.

31. After Solomon left, Defendant Pettiford and Plaintiff remained on the property and engaged in conversation.

32. Plaintiff and Defendant Pettiford were standing beside the mobile home when Defendant Pettiford began walking away.

33. Plaintiff's back was turned to Defendant Pettiford when he heard a shot and felt it hit him in the side of his face.

34. Plaintiff spun around and saw Defendant Pettiford shooting at him from a distance.

35. Defendant Pettiford ultimately shot Plaintiff seven (7) times.

36. After Defendant Pettiford shot Plaintiff, Plaintiff fell to the ground.

37. Plaintiff could hear Defendant Pettiford driving Plaintiff's truck away from the scene.

38. Defendant Pettiford later revealed to law enforcement that he had driven Plaintiff's truck to a nearby farm to hide it.

39. While Defendant Pettiford drove Plaintiff's truck away from the scene, Plaintiff crawled away from the house and into the woods before calling his wife to tell her that he had been shot and to call the police.

40. While Plaintiff was on the phone with his wife, he heard a vehicle drive up to the scene.

41. As instructed by him, Mixon's wife called 911 and told them Mixon reported he had been shot by a Mullins police officer and asking for emergency response.

42. Defendant Pettiford walked to where Plaintiff had crawled into the woods.

43. At this time, Plaintiff could hear police sirens in the area.

44. When Defendant Pettiford reached the spot where Plaintiff was laying, he put his knee on Plaintiff's neck and his hand over Plaintiff's mouth in an attempt to stop Plaintiff from breathing.

45. Plaintiff's wife arrived at the scene while still on the phone with 911 and reported to the dispatcher that she could not find Mixon yet, that he had suddenly become unresponsive, and that she could see a Mullins police truck parked at the scene.

46. As officers from the Marion County Sherriff's Office ("MCSO") approached the scene, they also observed an MPD police truck parked near the scene.

47. After observing the MPD police truck, officers heard screaming coming from the woods and were able to locate Plaintiff and Defendant Pettiford.

48. As MCSO officers approached, Defendant Pettiford removed his knee from Plaintiff's neck and removed his hand from Plaintiff's mouth.

49. Once they reached Plaintiff and Defendant Pettiford, MCSO officers directed Defendant Pettiford to step away from Plaintiff and retrieved a Sig Sauer pistol from Defendant Pettiford's person.

50. Defendant Pettiford told the MCSO officers that he had shot Plaintiff after the two had gotten into an argument.

51. Defendant Pettiford stated that the argument turned into a fight in which Plaintiff got the upper hand, so Defendant Pettiford shot him with his MPD duty weapon.

52. Upon information and belief, Defendant Pettiford, who was wearing his badge, was attempting to use his position as a police officer to justify shooting Plaintiff by asserting that Plaintiff had attacked a police officer.

53. When asked where his MPD duty weapon was, Defendant Pettiford indicated that it was in his truck before retrieving the MPD Glock and handing it to the MCSO officers.

54. MCSO officers then placed Defendant Pettiford in the back of a MCSO police cruiser and he was ultimately arrested for attempted murder.

55. As a result of his injuries, Plaintiff had to be air-lifted to McLeod Regional Medical Center in Florence.

56. Upon arrival, medical staff determined that Plaintiff sustained seven (7) gunshot wounds: one (1) in the back of the head, three (3) in the back, one (1) in the arm, one (1) in the neck, and one (1) in the abdomen.

57. Plaintiff also suffered a C2 spinous process fracture.

58. Due to the severity of his injuries, Plaintiff was considered to be in "very, very, very critical condition."

59. Plaintiff was forced to spend several months in the intensive care unit, including time spent on a ventilator, and required multiple, extensive surgeries.

60. Plaintiff was not discharged from McLeod Regional Medical Center until December 14, 2023.

61. As a result of his injuries, Plaintiff was also required to undergo months of occupational therapy.

62. Plaintiff's occupational therapist noted that Plaintiff, who was previously independent and working construction, suffers from hypersensitivity throughout his entire right forearm and hand as well as a decreased ability to complete all bathing and dressing tasks. Plaintiff also suffers from significant pain in his right upper extremity.

**FOR A FIRST CAUSE OF ACTION**
**(Unreasonable Seizure in Violation of**

**The Fourth and Fourteenth Amendments)**
(*against Defendant Pettiford*)

63. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 8–62 as if fully restated herein.

64. This action is brought against Defendant Pettiford, in his individual capacity, pursuant to the Fourth Amendment to the United States Constitution as incorporated through the Fourteenth Amendment, for Defendant's violation of 42 U.S.C. § 1983.

65. At all times material hereto, Defendant Pettiford was an employee and/or agent of Defendant Mullins and the MPD, and as acting within the course and scope of his employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant Mullins and the MPD.

66. As set forth in this Complaint, on September 28, 2023, Defendant Pettiford unreasonably seized Plaintiff by shooting him.

67. This seizure of Plaintiff by Defendant Pettiford was objectively unreasonable in light of the facts and circumstances confronting him.

68. By the time of this incident, the laws prohibiting Defendant Pettiford's unconstitutional seizure were clearly established under the United States Constitution.

69. Defendant Pettiford knew or should have known, and every reasonable officer in his position would have concluded, that seizing Plaintiff by force without probable cause that he had committed a crime, reasonable suspicion that he was engaged in criminal activity, or reasonable suspicion that he was armed and dangerous was unjustifiable and unlawful.

70. Similarly, Defendant Pettiford knew or should have known, and every reasonable officer in his position would have concluded, that the use of deadly force to affect the seizure was excessive, unjustifiable and unlawful.

71. Defendant Pettiford did not have probable cause or reasonable suspicion that Plaintiff had committed any crime.

72. Defendant Pettiford similarly did not have probable cause or reasonable suspicion that Plaintiff was armed or dangerous.

73. No underlying offense has ever been alleged against Plaintiff and Defendant Pettiford did not have probable cause or reasonable suspicion that Plaintiff was engaged in criminal activity.

74. Defendant Pettiford's conduct was objectively and subjectively unreasonable.

75. Defendant Pettiford's unreasonable seizure of Plaintiff was the cause in fact and proximate cause of Plaintiff's serious and life-threatening injuries.

76. As a direct and proximate result of Defendant Pettiford's acts, omissions, and unlawful seizures, Defendant Pettiford deprived Plaintiff of the rights guaranteed to him by the Fourth Amendment of the United States Constitution, in particular, depriving him of the right to be free of unreasonable seizure.

77. Defendant Pettiford is liable to Plaintiff for Plaintiff's injuries, pain, and suffering.

**FOR A SECOND CAUSE OF ACTION**
**(Excessive Use of Force in Violation of**
**The Fourth and Fourteenth Amendments)**
**(*against Defendant Pettiford*)**

78. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 8–62 as if fully restated herein.

79. This action is brought against Defendant Pettiford in his individual capacity, pursuant to the Fourth Amendment to the United States Constitution as incorporated through the Fourteenth Amendment, for Defendant's violations of 42 U.S.C. § 1983.

80. At all times material hereto, Defendant Pettiford was an employee and/or agent of Defendant Mullins and the MPD, and was acting within the course and scope of his employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant Mullins and the MPD.

81. As set forth in this Complaint, on September 28, 2023, Defendant Pettiford used unnecessary, excessive, and deadly force on Plaintiff. The amount of force used by Defendant Pettiford was objectively unreasonable in light of the facts and circumstances confronting him.

82. By the time of this incident, the laws prohibiting Defendant Pettiford's unconstitutional use(s) of force were clearly established under the United States Constitution.

83. Defendant Pettiford knew or should have known, and every reasonable officer in their position would have concluded, that the force used against Plaintiff was excessive, unjustifiable, and unlawful.

84. At the time of the incident, Plaintiff was invited to the scene by Defendant Pettiford, was not engaged in criminal activity, and was not threatening or acting violently towards Defendant Pettiford. Defendant Pettiford further lacked probable cause or reasonable suspicion that Plaintiff had committed a crime or that he was an immediate threat to Defendant Pettiford. Nevertheless, Defendant Pettiford, wearing his MPD badge and armed with his MPD duty weapon, shot Plaintiff seven times.

85. Following the shooting, Defendant Pettiford placed his knee on Plaintiff's neck and his hand over Plaintiff's mouth in an effort to stop Plaintiff from breathing, and only stopped when officers from the MCSO approached the scene.

86. When the officers approached Defendant Pettiford, he attempted to justify his use of force, while wearing his badge, by claiming that Plaintiff had attacked him.

87. Defendant Pettiford had actual knowledge that Plaintiff did not pose a threat to him, as Plaintiff was unarmed and at the scene at Defendant Pettiford's request.

88. Defendant Pettiford's use of force can be separated into two distinct uses of force:

    a. when Defendant Pettiford shot Plaintiff seven times; and

    b. when Defendant Pettiford placed his knee on Plaintiff's neck and his hand over Plaintiff's mouth in an attempt to stop Plaintiff from breathing.

89. Defendant Pettiford's conduct was objectively and subjectively unreasonable.

90. Defendant Pettiford's clear uses of excessive force were the cause in fact and proximate cause of Plaintiff's significant and life-threatening injuries.

91. As a direct and proximate result of Defendant Pettiford's acts, omissions, and clear uses of excessive force, Defendant Pettiford deprived Plaintiff of the rights guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution, in particular, depriving him of the right to be free of excessive force and of bodily integrity.

92. Defendant Pettiford is liable to Plaintiff for Plaintiff's injuries, pain, and suffering.

**FOR A THIRD CAUSE OF ACTION**
**(Gross Negligence)**
**(*against Defendant Mullins*)**

93. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 8–62 as if fully restated herein.

94. This is an action for gross negligence brought against Defendant Mullins under the laws of the State of South Carolina.

95. This cause of action is brought pursuant to the South Carolina Tort Claims Act, S.C. Code §§15-78-10, *et seq*.

96. At all times relevant to this complaint, Defendant Pettiford was an employee and/or agent of Defendant Mullins, which operates and manages the MPD, and was acting within the course and scope of his employment, in furtherance of the interests of Defendant Mullins, and with Defendant Mullins's knowledge and consent.

97. Defendant Mullins is liable for the actions and omissions of its employees and/or agents that gave rise to this action, including the actions and omissions of Defendant Pettiford.

98. Defendant Mullins, by and through its employees and agents, owed a duty to Plaintiff to act in a prudent and reasonable manner with regard to his health and safety, and a duty to ensure that Plaintiff, in interacting with agents of Defendant Mullins, remained free from excessive and unlawful force.

99. Defendant Mullins also owed ministerial duties in the following particulars, to wit:

    a. to provide responsible and effective operations of the MPD;

    b. to establish proper polices, customs, and regulations of the MPD, including policies regarding the use of force and proper use of officer duty weapons;

    c. to properly supervise its officers;

    d. to properly train and retrain said officers;

    e. to discipline said officers and only retain those officers fit for duty; and

    f. to properly correct and remediate any known deficiencies within its officers or within the MPD.

100. Defendant Mullins violated its non-discretionary and non-delegable duties by failing to investigate the allegations regarding Defendant Pettiford's alleged criminal activity; failing to investigate allegations that Defendant Pettiford was abusing his father; failing to investigate allegations that Defendant Pettiford was abusing painkillers; failing to investigate

allegations that Defendant Pettiford was exploiting his position as a police officer to avoid liability for illegal conduct; failing to train its officers regarding reasonable seizures and the use of force; failing to properly supervise its officers to prevent unreasonable seizures and the excessive use of force; failing to supervise its officers to prevent the inappropriate use of duty weapons; failing to establish proper policies regarding seizures, the use of force, and use of officer duty weapons and/or failing to enforce such policies among its officers; failing to correct or remediate deficient officer conduct; and failing to prevent Defendant Pettiford from unreasonably seizing Plaintiff and using excessive force against Plaintiff.

101. As such, Defendant Mullins breached its duties, including ministerial duties, owed to Plaintiff.

102. Defendant Mullins knew or should have known of the dangers posed by its failures illustrated in this complaint, and that said actions and inactions were reckless and/or constituted the total absence of care likely to result in violations of a citizen's rights, and as such were reasonably foreseeable.

103. Defendant Mullins, by and though its duly authorized employees, owed a duty to Plaintiff to be reasonable in the management and conduct of the MPD, and to ensure that citizens interacting with Defendant Mullins's employees and/or agents were not subject to unreasonable seizure and excessive and unlawful force.

104. Defendant Mullins, by and though its duly authorized employees, including Defendant Pettiford, breached duties owed to Plaintiff by failing to investigate the allegations regarding Defendant Pettiford's alleged criminal activity; failing to investigate allegations that Defendant Pettiford was abusing his father; failing to investigate allegations that Defendant Pettiford was abusing painkillers; failing to investigate allegations that Defendant Pettiford was

exploiting his position as a police officer to avoid liability for illegal conduct; failing to train its officers regarding reasonable seizures and the use of force; failing to properly supervise its officers to prevent unreasonable seizures and the excessive use of force; failing to supervise its officers to prevent the inappropriate use of duty weapons; failing to establish proper policies regarding seizures, the use of force, and use of officer duty weapons and/or failing to enforce such policies among its officers; failing to correct or remediate deficient officer conduct; and failing to prevent Defendant Pettiford from unreasonably seizing Plaintiff and using excessive force against Plaintiff.

105. Each act or omission detailed in this matter constitutes a separate occurrence.

106. Defendant Mullins's actions and omissions, by and through its authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiff and actually and proximately contributed to and/or caused the severe and life-threatening injuries sustained by Plaintiff.

107. Plaintiff is entitled to Judgment against Defendant Mullins for damages as to be determined by the triers of fact in this case.

108. As a direct and proximate result of Defendants' aforementioned conduct, Plaintiff incurred the following damages: bodily injuries; past, present, and future medical expenses; past, present, and future physical pain; past, present, and future mental anguish; past, present, and future inconvenience; past, present, and future lost earnings and lessening of earning capacity; disfigurement and/or deformity and associated humiliation and embarrassment; personal, social, and financial limitations; and other damages allowable at law.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a. Compensatory, actual, and consequential damages to Plaintiff;

b. Costs of this action and attorneys' fees to Plaintiff for the civil rights causes of action under 42 U.S.C. § 1988;

c. Loss of past and future support and services with interest;

d. Loss of earnings and/or earning capacity;

e. Punitive damages as to those causes of action where they are available; and

f. Such other and further relief as this Court may deem appropriate.

Respectfully submitted, this 18th day of August, 2025.

        **STROM LAW FIRM, LLC**

        *s/ Bakari T. Sellers*
        Bakari T. Sellers (SC Fed. ID # 11099)
        Mario A. Pacella (SC Fed. ID # 7538)
        Amy E. Willbanks (SC Fed. ID # 13537)
        Matthew B. Robins (SC Fed. ID # 13313)
        6923 N. Trenholm Road, Suite 200
        Columbia, South Carolina 29206
        Phone: (803) 252-4800
        Email: bsellers@stromlaw.com
                mpacella@stromlaw.com
                awillbanks@stromlaw.com
                mrobins@stromlaw.com

        *Attorneys for Plaintiff*